UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 11-10020-DJC |
| | ) | |
| | ) | |
| **LANCE HOLLOMAN** | ) | |

**GOVERNMENT'S MEMORANDUM PERTAINING TO PROPOSED RE-SENTENCING**

The government is submitting this Sentencing Memorandum based on the assumption that the Court is going to allow the Assented-To Motion to Vacate, accept the Rule 11(c)(1)(C) plea that has been proffered to the Court, and re-sentence the defendant immediately. Were the Court to accept that agreement, the defendant will be entitled to immediate release and would begin his 3 years of supervised release at once.

The abrupt change in this case creates several issues of concern at the defendant's re-sentencing on the Second Superseding Information (whenever it takes place). The first is that the defendant will be coming back on the street without the benefit of any time spent in a Community Corrections setting. The second is that the defendant no longer plans to live in Georgia upon his release (as the government understood he was intending to do upon the completion of his original 72-month sentence). Instead, the

1

government understands that Mr. Holloman plans to live with his sister at the same residence where he was living at the time of the underlying offense and which was in fact the address to which the defendant sent the cooperating witness the first time they engaged in what was then believed to be a drug deal.[1] See PSR at ¶13 (first deal was originally planned to take place at the Dorchester Residence).

At a minimum, these issues should cause the Court to reconsider the Special Conditions of Supervised Release to be included in any new Judgment of Conviction. The government urges the Court to impose a curfew from 9p.m. through 7 a.m. for the first 12 months of supervised release to help ensure the defendant will not be out at times when the incidence of crime is highest in the City of Boston and during the first critical months of his Supervised Release when violations are most likely to take place. See, e.g., "Maximum Impact: Targeting Supervision on Higher-Risk People, Places and Times," Pew Center for the States Public Policy Brief (March, 2009)(concluding that Probationers are "at the highest risk of re-arrest during the first few months on community supervision," that arrest rates after 15 months were substantially lower, and thus recommending that probation

---

[1] The government notes that no home visit was done in 2010 because the defendant's sister did not return tProbation's calls. See PSR at ¶

resources be "front-end loaded" to achieve maximum effect). The government also suggests that the defendant's probation officer should be allowed to relax the curfew for work or school and that it be enforced by electronic monitoring.

The government also suggests that the defendant be required to participate in Probation's MRT Program.  The government did not request this at the time of the defendant's original sentencing both because of the length of the sentence imposed and because it seemed likely that the defendant would be living outside Boston upon his release. Because of the changes in the defendant's release date and living situation, it believes that MRT Participation would assist the defendant.

The government also understands that the defendant may be seeking relief from the special condition in the original Judgment of Conviction prohibiting the use of alcohol.  Given the suddenness of the defendant's re-entry, the government urges the Court not to modify this restriction now, but instead allow Probation or the defendant to seek modification after he has earned it.  See PSR at ¶119 (defendant's history of alcohol use).

The government notes the defendant's prior admission that he has "an addictive personality" (PSR at ¶120).  This reinforces the need to retain the "no alcohol" condition for

the moment and also shows the need for a condition that the defendant notify Probation whenever he seeks or is given a prescription for pain medication.  See PSR at ¶118 (outlining prior injury and resulting abuse of pain medication).

The government would normally seek Associational and Geographic Restrictions in a case of this type.  Geographic Restrictions are not feasible here because of the defendant's housing situation.  The government has also provided defense counsel with a list of past associates of the defendant who have felony convictions and thus who he is precluded from associating with without the express permission of Probation under the "standard" condition contained in USSG §5D1.3(c)(9).

                                  Respectfully submitted,

                                  CARMEN M. ORTIZ
                                UNITED STATES ATTORNEY

                        By: /s John A. Wortmann, Jr.
                                JOHN A. WORTMANN, JR.
                                Assistant U.S. Attorney
                                One Courthouse Way
                                Boston, MA 02210
                                (617) 748-3207

**CERTIFICATE OF SERVICE**

    The government hereby certifies that the foregoing was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.

                                      /S John A. Wortmann, Jr.   12/17/12
                                        JOHN A. WORTMANN, JR.
                                        Assistant U.S. Attorney